I'd like to reserve five minutes for rebuttal. May it please the court, my name is Mike Subit, and I represent appellant Marty Heimbigner. Mr. Heimbigner is with me at council table today. Mr. Heimbigner lives here in the Tri-Cities, and he worked here as chief financial officer for Solgen. Defendants managed Solgen, and they orchestrated his termination when he refused to falsely certify to Solgen's bank that the company's financial statements were in accordance of generally accepted accounting principles. The district court nevertheless held that defendants had made a compelling case that there was no personal jurisdiction over defendants in Washington, and held that Mr. Heimbigner could not bring a wrongful termination claim in violation of public policy against the defendants, only an intentional interference with contract claim. The district courts erred in both respects. I'd like to start with the personal jurisdiction ruling. The district court here found no jurisdiction, even though the defendants came to the plaintiff's forum state, committed intentional tort in the plaintiff's forum state, that caused harm in the plaintiff's forum state. I'm not aware of any other case that has found no jurisdiction under those facts, and neither the district court nor the defendants cited any. And the ruling was particularly surprising, because the court found that we had easily met the first two prongs of personal jurisdiction, that there was purposeful direction into Washington, and a rising out of relating to. In fact, the district court found that applying the wrong and a stronger legal test. The court did find that Edgewater was not registered to and did not conduct any business in Washington, that Jones and Schneider operated their offices from Illinois. And so what I think the court said was that the connection was really too attenuated. That is what the court said, and that was error, Your Honor. I mean, going back to the Kramer case, the court said there, one contact is enough, is that's the one that causes the plaintiff's injury. And that's especially true if it's an intentional tort. Both this court's precedents and the Supreme Court find a stronger case for jurisdiction when an intentional tort is committed. And as I said, this is the only case I've ever seen where the defendant came to the state and committed an intentional tort, although under the Calder effects test, it really doesn't matter that they came here. It's just icing on the cake. And so they committed a tort that was going to be against a plaintiff in Washington. They knew that he worked here. And again, the Justice Court focused, I think, incorrectly on the corporate formalities rather than the realities. They were managing a business in Washington, Solgin. They were hiring. They were doing the firing. They hired Mr. Heimbiger here in Washington. They interviewed him, references. They supervised him, and they fired him. And the fact that they did it sometimes from Illinois in the age of the internet and the Calder effects test really doesn't matter. And as I said, the district court applied incorrectly a but-for causation test, and that's just not the law anymore. So despite these easy showings of personal jurisdiction on our burden, the court then found, the defendants had found, proven a compelling case against jurisdiction. And quite frankly, the district court got a lot of that wrong. First of all, the court didn't recognize that in a situation like this, there is a strong presumption of jurisdiction, a heavy burden on the defendants to overcome. And quite frankly, the court turned what was a routine case of showing that it's more convenient to litigate from Illinois rather than here into a compelling one. Most out-of-state defendants could make the showing they make in this case. That's not a compelling case against jurisdiction. As the court is aware, it's a seven-factor test. The court found three in favor of jurisdiction, four against. Even if it were correct about that tally, and we don't think it was, that's still not a compelling case. The Roth case and then a couple of more recent cases have reaffirmed, when it's very evenly balanced, it's not a compelling case. But the court misanalyzed several of the factors. And I'm just going to focus on the most egregious one. It found the degree of purposeful injection favored the defendants. That is incorrect. The court, again, focused on one visit to Washington. That's enough when the visit is where the intentional tort is committed. Are the defendants correct when they indicate that the majority of the witnesses were in Illinois and not in Washington? No. That is incorrect. The district court committed another error, and this is the fifth factor. It only looked to, quote, the witnesses identified in the complaint. That's not how a 12b2 motion works. Mr. Heimbinger submitted a declaration, including several witnesses, including the CEOs, former and present, of Solgin, who live right here. And it's about equal, the number of witnesses in Washington and Illinois, some other places. And so just getting to the fifth factor, when those are equal or there's witnesses involved, this court holds the factors awash. And again, the district court found the fifth factor favored the defendants. And so once again, that was another error. In terms of going back to the degree of purposeful interjection, Free Stream Aircraft says commission of a tort in the state usually supports jurisdiction. There's no reason to depart from the usual rule. Calder, the Supreme Court, said someone who's injured in their home state doesn't need to go to the defendant's home state to seek redress when the defendant knowingly causes injury in the plaintiff's home state. And so finally, Panavision. The facts here showing purposeful injection, which this court easily found favored the plaintiff in Panavision, are much, much stronger. All the defendant did there was write a letter to someone in California. Here, they were running a business. So again, I don't think this is a close case. There was just simply no compelling showing of jurisdiction. Let me then move on to the merits, the 12B6 motion. And I'm going to frame this in terms of the certification issue that the court issued an order about. And again, there's a statute in Washington, RCW 2.60020, that allows this court to certify. There's, in centurion properties, this court laid out three factors to consider, whether it's a question of law not clearly determined, outcome determinative, and significant policy implications. And I'm going to deal with each of those in turn. Question of law not clearly determined. Obviously, there's no Washington Supreme Court on this issue, or otherwise, it would be an easy case. The Cagle case and then the two cases on the same day, Allison and Wilmot, I think are very suggestive of what the outcome is. Because in both of those cases, the Washington Supreme Court analogized wrongful discharge cases in violation of public policy to unlawful termination cases under the Washington law on discrimination. And I really want to focus on Wilmot and Allison, because even though it's a different issue, it's exactly the same analysis here. So Allison involved the question of the meaning of a statutory term, because of, in the Washington law against discrimination. The common law definition of because of is but for causation. And the US Supreme Court has repeatedly told us that. The Supreme Court said, no, we are not applying the common law definition to the statute. We're going to apply substantial factor, which is less than but for causation. Then in Wilmot, decided the same day, again, the common law tort of wrongful discharge. What is the causation standard? And the court did not use the common law standard. They took exactly the same standard they had used as the statute under the Washington law against discrimination, and said it's substantial factor. Here, it's the same analysis, but it's a different issue. We are saying that the broad definition of employer under the Washington law against discrimination, which is no doubt broader than the common law, the Washington Supreme Court would apply that here when the issue is before them. And so I feel that those certainly suggest strongly what the Washington Supreme Court would do. But at the same time, we don't have an objection to certification. I raised that in my brief. Clarity is in the eye of the court. And certainly, the Washington Supreme Court will answer this question definitively. I want to talk just for a minute about the Iwana case, because that case is not a model of clarity, and it certainly doesn't answer the question. Iwana does not, whatever else Iwana means, it does not foreclose claims against non-direct or de facto employers. In fact, what they did there is they said the plaintiff hadn't proven it. And that, in fact, is how the defendants read it in the district court. They said we just didn't prove de facto employer. Really, what they said in Iwana was that they're not going to need to recognize it there because of the alternative remedy of intentional interference claims. That was the law when Iwana was decided. In 2015, in something we call the wrongful discharge trilogy, which is Rose, Rickman, and Becker, the Supreme Court eliminated the availability of any other remedy as part of the wrongful discharge analysis. Defendants, this is the only case in 11 years to reject a wrongful discharge claim because there was an alternative remedy. And so again, I feel that the Wilmot Allison is sufficiently clear. But if this court doesn't, we're certainly happy to certify. Just turning very briefly to the other two factors, it's certainly, and determinative doesn't mean determinative of the whole case. There are plenty, we cited several cases where there's certification. Brady was one where certification was only relevant to class certain. There were numerous other claims that it was not relevant to. It's certainly determinative of the wrongful discharge claims. And finally, the policy, I mean, this is a common law tort. And it's certainly the Washington Supreme Court is the ultimate arbiters. And there's significant differences between wrongful discharge and intentional interference. On the certification issue, we asked about certifying both the question of indirect employers and alternatively the question of individuals. There was very little briefing on the second aspect of the issue. As far as I can tell, even less case law on that issue. Do you have a position on certification? I do. I think if the court does certify over the indirect issue, it should also certify the individual liability. Actually, I've been on both sides of that issue. There's numerous district court cases. There's no appellate court cases whatsoever. The early trend was to reject it. And then actually in the Blackburn decision by actually the same district court that decided this case, it's really turned the tide. And most cases have since then accepted it. But again, there's absolutely no appellate authority. We think the very reasons in the Blackburn decision is the same reasons why there should be beyond the common law and indirect. But we absolutely agree that if you certify the indirect, you should certify the individual. I'll leave the rest of my time for rebuttal. OK. Good morning. Tom Petrides, appearing for defendants and appellees. I'm going to address the question the court asked on Monday first. Yesterday, we filed a supplemental letter brief to bring to the court's attention a recent Ninth Circuit decision that was just issued on Tuesday. And that decision was Wells versus BNSF Railway Company. And it happened to discuss the standards for deciding whether to certify an issue to a state Supreme Court or not. In Wells, the court concluded that certification is unwarranted because there was sufficient Montana state law to answer the question. And isn't that precisely the opposite of what's happening here? In contrast, the Washington Supreme Court has never addressed the issues that we're talking about certifying? The Washington Supreme Court has not. But the Iwana case clearly does. When you read the Iwana decision, they talk about the public policy claim can be brought against the direct employer. And there's no dispute in Iwana who the direct employer was in that case and who the employee worked for. So I think you can make the argument that you're making now, that Iwana gives us sufficient information to know where the court is heading. But I don't see how Wells is helpful to you, the sort of factual distinction between what happened in Montana and the dirt, the case law in Washington from the Washington Supreme Court. Wells cites to two other Ninth Circuit decisions, Reardon v. State Farm Mutual Auto from 2009, a Ninth Circuit decision, and also Syngenta Seeds v. County of Kauai from 2016. In both of those cases, the plaintiff in those cases had raised the question of certification at the district court level. The Wells case, it was brought up for the first time in front of the Ninth Circuit. In both of the Reardon case and the Syngenta case, the Ninth Circuit ruled that the standard for determining when the district court judge denies the request to certify was an abuse of discretion. In this particular case, plaintiff's counsel raised directly to the district court the question of whether they should certify the issue of the direct employer, de facto employer question. And the court addressed that issue in a footnote one of its decision, in which it said, the law is clear. And I decline plaintiff's request to review it because the law is clear. Well, what if we disagree that the law is clear? So then the question becomes, it's an abuse of discretion standard because it was raised on that issue. The issue of the de facto employer was raised. And where there is a Washington Court of Appeal that squarely held that the public policy wrongful termination claim can only arise against the direct employer, not some indirect or de facto employer. But that was an employer that controlled the individual. But is there any case indicating that didn't control the employee? Is there any case that says that an indirect employer controls the employee? Well, this is where plaintiff's counsel is just, he's saying that Edgewater controlled the plaintiff. That's just not true. Well, that's a fact. Edgewater had an investment, a 30% investment. It's in the record that they had two board of directors on the board. Well, we're on a motion to dismiss. So we're construing all the facts in the light most favorable to plaintiff. And the district court said that there were disputes as to the extent of Edgewater's control and whether some of the defendants were acting on behalf of Edgewater or as agents of Solgin. So that's a disputed fact. So at this point, I think we would assume that they were acting on behalf of Edgewater and that Edgewater was exercising control. I don't believe the district court actually made those distinctions. Because what's interesting is when plaintiff filed this lawsuit, plaintiff alleged that he was bringing his claims against Edgewater and its two agents, the two individuals. That's what the complaint brought the claim against. When the court addressed the issue about the de facto employer, it ruled that because Edgewater was not the direct employer, it could not state a claim for public policy. Counsel, I'm confused as to why you are hanging your hat on this determination. I'm putting aside for a moment whether the district court should have even properly reached the merits of a claim after dismissing for personal jurisdiction, which is, I think, a separate question which you can address if you'd like. But I think the more important question that I'd like to have answered is, why are you focusing on that? Because we're on de novo review with respect to the merits of the claim. So I think I heard you say something about an abuse of discretion standard, but I'm not understanding why. To decide for certification. To decide for certification, it would be abuse of discretion. Well, we can decide for ourselves whether we want to certify. So we wouldn't be reviewing the district court's decision not to certify. We would be deciding for ourselves whether we want to certify something. Again, based on the Reardon case and the Syngenta case, it seems that it's a different standard. If it hasn't been brought up, the court can decide on its own. You would agree that we are reviewing the merits claims de novo? Yes, yes, yes. The merits claims de novo, yes. And so what I was going to say with respect to when the judge dismissed the two individuals, he did so by saying, because they can't bring the claim against Edgewater, they can't bring the claim against the two individuals who are agents of Edgewater. And that's what Plaintiff's complaint was all about. And I mean, to put it to emphasize, with respect to whether individual liability, because we agree there is not a case that discusses individual supervisor or manager liability in the context of a wrongful termination violation of public policy. But that really wasn't a claim that Plaintiff was bringing in this action. He was bringing the action against Edgewater and their two agents. When you look at what he brought on his appeal, his issue on appeal number three was, should this court certify the de facto employer question? He didn't even ask whether the court should certify the individual supervisor issue, because he wasn't appealing that issue. And from the standpoint of, he brought his lawsuit against the individuals as agents of Edgewater. It wasn't until his reply that he raised for the very first time that maybe the court should certify the issue of the two individual supervisors as to whether they could be liable for wrongful termination or not. So I'm not even sure that's actually on appeal here. Because again, when you look at his complaint, and you look how he framed his complaint, he was bringing the lawsuit against Edgewater and its two agents, acting on behalf of Edgewater. And the court dismissed all three defendants on the public policy claim, because the court determined that the law was clear that you can't bring a public policy claim against a non-direct employer. So I read Iwana as saying, you can't bring a claim against an employer who exercises no control over the employee. So if there is a dispute of, I would say it's an open question of whether you can bring a claim against an indirect employer who exercises control. Do you know of any case that addresses that scenario? There was a two district court decisions that came after Iwana that, which were cited in our brief, that indicate what you are saying. I'm not aware of a Washington state court that addresses it squarely. But I think when the law is clear, it doesn't have to be based on what the Washington Supreme Court has decided. The Iwana decision hasn't ever been questioned by any other court. It's been the law of state of Washington for many years. I'm not questioning it. I'm saying it's distinguishable. Well, I think when you read the conclusion of Iwana, two things that it points to. The wrongful discharge doctrine must be extended with caution. And that mirrors what the Washington Supreme Court, in its decision allowing public policy. So this is a narrow exception. And subsequent courts have repeatedly said that. In Iwana, it said that there's no need to extend this narrow exception. And it ruled that the trial court properly dismissed appellant's claims of wrongful discharge against the port. I think maybe we're getting confused with, oh, it was a de facto or indirect. I think what Iwana squarely held was, look, there was a direct employer. And that direct employer was the subcontractor. I think when you read Iwana, the port did have control. They controlled the worksite. They were the contractor. They had access to allow people to come on. And they hired the sub. So there was as much control or influence there as Edgewater, which it was an investor. And so Edgewater itself had two seats on the board. It doesn't control Solgen. Solgen had another entity, the other power company on the board. And it had the Solgen people on the board. So that's not a factual dispute. That's just in the record. To put the label, well, they controlled, that's just conclusionary allegations. How did they control? Because they did not have control of Solgen. They were an investor in Solgen. And so that's why I think that you have to look at the claims he was bringing. He really wasn't bringing the claims against the two individuals as officers and directors of Solgen. He was bringing the claim against Edgewater because he wanted to try to get that investor into the mix. And when you look at the allegations in the complaint, for example, against Mr. Jones, there's no allegation in the complaint that Mr. Jones had anything to do with his termination. There's one allegation that says he attended a meeting in August in which they discussed the accounting issues. So the complaint is based on a lot of conclusionary allegations. And in a motion to dismiss, you don't have to take statements of conclusions of fact as statements. You have to have some factual support for those allegations. And I think Plaintiff chose to bring the case that he did and crafted it the way he did, exactly the way he wanted to. And the court addressed that and ruled that as a matter of law under Washington, the law is clear that there's no wrongful termination of public policy against some employer other than the actual employer. And so that's why I think that the case was dismissed. And there's no need to certify on that issue. With respect to the supervisor liability issue, I'm not even sure that's really in front of this case anymore. Again, he didn't really appeal their issue about, are they in the, were they acting on behalf of Solgin? The claim that remains is, well, they're still in the case for interfering with the contractual relationship that Mr. Hemberger had with Solgin. That lawsuit, that claim is still in the case in Illinois if it gets filed. And so that's a separate claim, which is still in the case. That's why I think that there is a distinction there. And it's not, you know, your request as to whether you should certify on that, yes, you have the discretion to do that. But I think where it's been addressed in the lower court and denied, I think you should find, well, why did the judge abuse his discretion in denying it? Because I do, again, think the law is clear. On the jurisdiction issue, I just want to point out that cases that we cited to in our brief, including Ziegler versus Indian River County on page 16 of our interim brief, and also Glencoe-Rotterdam also on page 16, they state the court must weigh all seven factors, and none are dispositive. And I think Plaintiff's counsel is trying to kind of pick here and pick here with respect to what the judge decided. I think the judge went through those factors and reached correct conclusions with each of them. You're reviewing that to NOVA as well, correct? Yes, yes. And then also, the Glencore case found that finding that more factors weigh in favor of defendants over plaintiff renders jurisdiction unreasonable and dismissal of a lack of personal jurisdiction claim is warranted. I know there's courts that use the word compelling and things like that, but the bottom line is all these courts, they look and they balance them. And Plaintiff's counsel said that it was four to three. It was really four to two, with one slightly in favor. Well, counsel, how is it that the context is too attenuated? Solgin was just down the street here in Pasco. Jones and Snyder held officer positions with Solgin. One was an officer and one was a director. But they were at all times in Illinois, except for occasional travel here. But he's not suing Solgin. He didn't sue Solgin in this lawsuit. He sued Edgewater. And so the judge went through the thing where their contacts with the state were minimal. Occasional emails, a few letters, some phone calls, the court, I think, correctly found with number factors one and two weighed in defendants' favor. And also the witnesses. Counsel, I read the district court's decision on this point to hold that the defendants had sufficient minimum contacts. Not minimum contacts, that there were sufficient minimum contacts with Washington, but it would be unreasonable to hail them into court here, which I think is different than what you're arguing. Well, I think that the factors that the judge found, he found the four factors in favor of defendants, meaning it would be more burdensome on them. I understand your argument. I think to the point that Judge Mendoza was raising is that it's difficult, I think, for you to stand before us today and argue that there weren't sufficient minimum contacts when even the district court ultimately determined there were, and then on the balance of factors concluded that there wasn't personal jurisdiction. But I hear your argument now to even be taking back what the district court itself conceded.  No, I was focusing on the seven factors. And I didn't mean just with respect to the first two. There's three, and then of the third, it's the seven. I was focusing on the seven, not the first or second. In your briefing, I think you did argue the district court erred in finding there were sufficient minimum contacts. Are you... That's in the brief. I think based on the discussions, we maintain that position. I'm not going to say that's our strongest position. We're for purposes of this, we're looking to center. So you're focusing on the balancing and the reason served.  That's all I had, unless you had other questions. Thank you, counsel. Great, thank everyone. I'm sorry, yes, you have three minutes. Thank you. In terms of the certification, Washington law, we're dealing with the Washington certification statute. And as the court has said, you have as much opportunity to certify as the district court did. There's no requirement that I did or did not raise it there. I'm not punished for bringing it up there. Again, if this court believes that the three factors are met, then it should certify. The test was not articulated correctly. Because this is diversity, this court's role is to not... ..is to figure out, predict what the Washington Supreme Court is going to do. Again, I think the Awana case doesn't really give this much. And by the way, what my opposing counsel just said here today is that they read it as limited to direct employers. That isn't how they read it in the district court. I'm looking at page ER106. This is defendant's motion to dismiss in the Awana case, declining to impose liability for common law discharge on an entity who was neither a direct nor a de facto employer. And so they read Awana as allowing against de facto employers. And they just said factually. So they've changed their position on appeal because the district court misread it in a way that completely prohibited. I want to, in terms of this issue, again, we're not up here... It wasn't dismissed on Iqbal Twombly, it's not about conclusory allegations. And on the personal jurisdiction, Mr. Heimbiger has a detailed affidavit with not only facts, but emails showing that Edgewater, when they were talking about the offer, meeting between Edgewater and Suljan, we later found out that Edgewater wrote the termination script I have it right here that they wrote. So the idea that they didn't run Edgewater, it's not before, but it's factually untrue. One last point is the transfer for venue motion. The district court didn't reach it. This court can decide this, however. In the Dole case, very similar. The district court dismissed the case for one of personal jurisdiction. The district court did not reach, in that case, a motion for a non-convenience, which is very similar to a transfer venue. This court, nevertheless, reached the issue in the matter of judicial economy. I think it can do so here. It's the same paper record in front of the district court as it would be here. And that the nine factors that support venue here, they really are strongly in favour of it. Again, the defendants have asked the court to do so. And we don't have an objection they're doing. So, again, it's obvious that there was jurisdiction here and that venue is proper. So, in sum, this court should reverse the personal jurisdiction ruling and should either reverse the ruling on the dismissal of the wrongful termination claim or certify that claim and the individual liability one. Just one last point. There are actually seven cases on this cited in the briefs on the individual liability. They go both ways. But, as I said, the most recent trend is in our favour. Thank you, Your Honour. All right. Thank you, counsel, for your helpful arguments today. And I believe we are adjourned for the day. All rise.
judges: SUNG, MENDOZA, DESAI